# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| **ARTHUR TIMES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:14CV924NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Arthur Times (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 14). Defendant has filed a brief in support of the Answer. (Doc. 19). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 7).

# I.
## PROCEDURAL HISTORY

On January 25, 2011, Plaintiff filed his applications for DIB and SSI. (Tr. 142-54). Plaintiff alleged a disability onset date of September 1, 2009. Plaintiff's applications were denied, and he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 67-68, 85-89, 92). After a hearing, by decision, dated December 11, 2012, the ALJ found Plaintiff not disabled. (Tr. 15-24). On March 18, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). As such, the ALJ's decision stands as the final decision of the Commissioner.

# II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of

impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5.  If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  Id.  See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." <u>Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1022 (8th Cir. 2002). <u>See also</u> <u>Cox v. Astrue</u>, 495 F.3d 614, 617 (8th Cir. 2007). In <u>Bland v. Bowen</u>, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

<u>See also</u> <u>Lacroix v. Barnhart</u>, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)); <u>Hartfield v. Barnhart</u>, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. <u>See</u> <u>Cox</u>, 495 F.3d at 617; <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005); <u>McClees v. Shalala</u>, 2 F.3d 301, 302 (8th Cir. 1993); <u>Murphy v. Sullivan</u>, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. <u>See</u> <u>Davis v. Apfel</u>, 239 F.3d 962, 966 (8th Cir. 2001) (citing <u>McKinney v. Apfel</u>, 228

F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence").  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992);

Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See

id.  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  <u>See</u> <u>Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v. Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  <u>See</u> <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857 (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence.  <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used.  An ALJ posing a hypothetical to a VE is not required to

include all of a plaintiff's limitations, but only those which the ALJ finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

In his Disability Report, Plaintiff, who was born in 1960, alleged that he became disabled, commencing September 1, 2009, due to carpal tunnel syndrome, high blood pressure, and problems with his neck, shoulders, and back. (Tr. 188). At the October 4, 2012 hearing before the ALJ, Plaintiff testified that he had pain in his left shoulder and arm; he had difficulty lifting his arm overhead and could not lift "too much"; he had pain in both elbows and numbness in his right hand, for

which he wore a brace; he had pain in his back for the past twenty years "or longer"; and he had an appointment to have a pacemaker implanted. (Tr. 41-46, 48-49).

The ALJ found that Plaintiff met the insured requirements through December 31, 2012; that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, September 1, 2009; that he had the severe impairments of degenerative disc disease, left rotator cuff strain with tendonopathy, and bilateral ulnar neuropathy; and that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ found that Plaintiff had the RFC to perform medium work[1] except that he had to avoid climbing ropes, ladders, or scaffolds; he must avoid hazards of heights and machinery; and he was limited to frequent handling or gross manipulation, fingering or fine manipulation, and pushing and pulling with his arms. After soliciting the testimony of a VE, the ALJ concluded that, although Plaintiff was capable of performing his past relevant work, there also were other jobs, in the national economy, which he could perform, given his age, education, work history,

---

[1] 20 C.F.R § 416.967(c), Physical Exertion Requirements, provides that "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."

and RFC. As such, the ALJ found Plaintiff not disabled within the meaning of the Act. (Tr. 15-24).

Plaintiff contends that the ALJ's decision is not based on substantial evidence because the ALJ did not consider the effects of Plaintiff's individual impairments when formulating Plaintiff's RFC; because the ALJ did not consider the combined effects of Plaintiff's impairments when formulating his RFC; because the ALJ failed to provide a "logical explanation for the RFC assessment"; because the ALJ erred when stating that Plaintiff's doctor did not prescribe pain medication because the doctor found Plaintiff had improved; because the ALJ did find Plaintiff had a medically determinable cardiovascular impairment; and because the ALJ failed to develop the record and order that Plaintiff undergo a consultive examination. (Doc. 14). For the following reasons, the court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence.

## A.     Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination as Plaintiff's credibility is relevant to other factors, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953,

957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence.  Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered the reports of Plaintiff's medical providers upon examination of Plaintiff. (Tr. 19-20). See Orrick v. Sullivan, 966 F.2d 368, 372 (8th Cir. 1992) (holding that an ALJ may discredit a claimant's subjective complaints where there are inconsistencies in the record; the ALJ may give more weight to the medical records than to a claimant's testimony); Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991).

Notably, on January 7, 2010, Plaintiff had full range of motion (ROM) in the shoulders, with pain on rotation and mildly reduced grip strength on the left, which the doctor *attributed to poor effort*. (Tr. 234). On January 14, 2010, Bryan Hodge, D.O., reported that physical examination showed *normal musculature and normal ROM* for Plaintiff's age. (Tr. 243-44). On May 6, 2010, upon examination, Dr.

Hodge reported no neurological deficits; that Plaintiff's *cardiovascular system showed normal rate and rhythm with no murmurs, gallops or rubs*; and that Plaintiff's blood pressure was 130/80.[2]  (Tr. 245-46).  Although, on July 8, 2010, Plaintiff reported numbness in both hands for the past month, on examination, Dr. Hodge reported that he had no sensory loss or weakness; he had intact balance and gait; and normal ROM.  (Tr. 248-49).  On July 15, 2010, neuromuscular findings were normal.  On this date, Plaintiff's blood pressure was 160/90.  It was noted that Plaintiff's hypertension was uncontrolled and that his medication was adjusted.  (Tr. 252).  On August 16, 2010, Plaintiff's blood pressure was 145/94 and 140/110, and Dr. Hodge reported that Plaintiff's *hypertension had improved* and that examination of Plaintiff's wrist was normal.  (Tr. 254-55).  Although on September 15, 2010, Plaintiff reported constant right shoulder pain, Miranda Coole, M.D., reported that, upon examination, Plaintiff's *left shoulder was normal*, and he had *pain free full ROM* in his right shoulder.  (Tr. 258-59).

On January 5, 2011, Naseem Shekhani, M.D., who is board certified in Physical Medicine and Rehabilitation, reported that Plaintiff said that his neck and

---

[2] http://www.mayoclinic.or/diseases-conditions/high-blood-presure/in-depth/blood-presure/ART-20050982 (last accessed 08/05/2015) (systolic (top number) below 120 and diastolic (bottom number) below 80 is normal blood pressure; 120-139 over 80-89 is prehypertension; 140-159 over 90-99 is stage 1 hypertension; 160 or more over 100 or more is stage 2 hypertension; adopting a healthy lifestyle is recommended for prehypertension).

shoulder pain were a ten on a ten-point scale. On examination, however, Plaintiff had *minimal tenderness in the shoulders*, *full strength of 5/5*, and no sensory deficits; his "*muscle stretch reflexes [were] within normal limits*," but he had painful internal rotation, limited ROM, and tenderness in the low back. Dr. Shekhani's assessment included left rotator cuff strain and left shoulder injury, lumbago with facet joint syndrome, and neck pain. (Tr. 306-307). On January 19, 2011, when Plaintiff said his shoulder, neck and low back pain were getting worse, Dr. Shekhani reported that Plaintiff had *full strength, no sensory deficits*, and antalgic gait.[3] (Tr. 308).

On January 21, 2011, when Plaintiff reported that he had "new pain" in his arms since a December 2010 motor vehicle accident and that he had pain with shoulder movement and finger numbness, Dr. Coole reported that Plaintiff had *good grip strength bilaterally*. *No cardiovascular abnormalities* were noted, and Plaintiff's blood pressure was 157/80. (Tr. 296-97). On February 21, 2011, Dr. Shekhani noted Plaintiff had *full strength, no sensory deficits, painful ROM in the left shoulder, back tenderness, and negative straight leg raise*. Plaintiff's blood pressure was 130/80. (Tr. 309). On February 28, 2011, Dr. Shekhani reported that Plaintiff's left shoulder ROM was restricted; he had minimal tenderness on the

---

[3] Antalgic gait is defined as a "limp in which a phase of the gait is shortened on the injured side to alleviate the pain experienced when bearing weight on that side." The American Heritage Medical Dictionary, Houghton Mifflin Co. (2004).

anterior aspect of the bilateral shoulders; Plaintiff's peripheral pulses were within normal limits; he had *full strength of 5/5* and no sensor deficits; and his *muscle stretch was within normal limits*. Dr. Shekhani administered a facet joint injection to Plaintiff on this date. (Tr. 346). On March 7, 2011, Dr. Shekhani reported that Plaintiff had *normal left shoulder ROM* and *minimal tenderness, full strength, no sensory deficits, no lumbar spine tenderness*, and a *minimally antalgic gait*. Dr. Shekhani determined that Plaintiff should not receive an injection, and, because he had *improved "significant[ly]*," that Plaintiff should continue with his regular doctor. (Tr. 313).

When David Kieffer, M.D., diagnosed Plaintiff with carpal tunnel syndrome, on May 2, 2011, Dr. Kieffer reported that Plaintiff showed abnormalities and muscle spasms in his hand. (Tr. 432). On July 18, 2011, Dr. Coole reported that Plaintiff had no limitation of motion in his left wrist, although he had positive Tinel's sign.[4] Plaintiff's blood pressure was 120/80; he had no cardiovascular abnormalities; on evaluation and inspection, he had no abnormalities in the right wrist; in regard to right wrist ROM, Plaintiff had 30 degree ulnar ROM, 20 degree radial ROM, 70 degree extension, and 80 degree flexion; he had pain free active ROM in the right wrist; he had "passive pain free range of motion normal" in the

---

[4]  Tinel's sign is a sensation of tingling, or of "pins and needles," felt in the distal extremity of a limb, when percussion is made over the site of an injured nerve. Stedman's Medical Dictionary, 1422 (25th ed., Williams & Wilkins 1990).

right wrist; and he had no edema, cyanosis, or clubbing in his extremities. (Tr. 420). On September 21, 2011, Dr. Coole reported that Plaintiff had decreased ROM in the right shoulder, pain free ROM in the right wrist, normal upper extremity strength, and positive Tinel's sign. His blood pressure was 140/85 and 154/88. *No cardiovascular abnormalities* were noted. (Tr. 423-24).

On January 18, 2012, when Plaintiff was seen for medication refill, pain, and hypertension, Dr. Cooley reported that Plaintiff's blood pressure was 143/86; he had *regular heart rate and rhythm*; he had no edema, cyanosis, or clubbing in his extremities; *no cardiovascular abnormalities* were noted; and his *hypertension was benign*. (Tr. 425-26). An April 4, 2012 *right wrist x-ray* showed "no evidence of fracture, dislocation or bone destruction," and "[n]o significant arthritic changes." The impression was "*negative right wrist*." (Tr. 459). On April 5, 2012, Donald Brancato, M.D., reported that, on examination, Plaintiff had sensory abnormalities in the fingers which were "not consistent with carpal tunnel" syndrome; that Plaintiff's hands showed abnormalities and that Plaintiff had pain with ROM in the left shoulder. (Tr. 441). When Plaintiff presented on June 15, 2012, with shoulder pain and "to discuss not responding episode, wrist pain, and hypertension," Dr. Coole reported that Plaintiff was positive for back pain; his blood pressure was 130/88 and 138/79; he had no edema, cyanosis, or clubbing in his extremities;

Plaintiff was negative for chest pain and irregular heartbeat/palpitations; he had *no motor or sensory deficits*; and Plaintiff's *hypertension was benign*.  (Tr. 454-56).

On September 2, 2012, Plaintiff was brought to the emergency room due to syncope[5] and bradycardia.[6]  Plaintiff reported that he had two previous episodes of syncope in the past year and a half, and that he had been drinking gin and smoking marijuana when he had the current episode of loss of consciousness.  On admission, physical examination showed some loss of bilateral hand sensation, weakness in the left arm, and left arm pain.  Plaintiff had no edema in his extremities; his motor examination was 4/5 in the left deltoid and 5/5 in the lower extremities; light touch and pin-prick sensation in the bilateral forearm, arm, and lower extremities was intact and symmetrical; Plaintiff had "paraesthesia of bilateral hands on dorsal and palmer aspects from tips of finger to 2 cm above wrist"; his gait could not be assessed.  It was noted that Plaintiff had polysubstance abuse.  An electrocardiogram (EKG) showed *normal sinus rhythm* with sinus

---

[5] Syncope is the "medical term for fainting or passing out.  It is caused by a temporary drop in the amount of blood that flows to the brain.  Syncope can happen if you have a sudden drop in blood pressure, a drop in heart rate, or changes in the amount of blood in areas of your body.  If you pass out, you will likely become conscious and alert right away, but you may [] feel confused for a bit."  See  http://my.clevelandclinic.org/services/heart/disorders/syncope.  (last visited 06/23/2015).

[6] Bradycardia is a "slow hearbeat.  When a heart is experiencing bradycardia, the heart may beat too slowly to provide adequate amounts of blood to the body."  Medtronic, Inc. v. Guidant Corp., 2004 WL 1179338, at *2 (D. Minn. May 25, 2004) (unreported).

arrhythmia. (Tr. 468-69). On September 2 to 3, 2012, Plaintiff underwent a "24 Hour Full Disclosure Monitor," which showed "Frequent Premature Atrial Contractions." (Tr. 472). On September 14, 2012, Ankur Shah, M.D., noted that Plaintiff's *hypertension was benign*, and that Plaintiff was to have an appointment to have a pacemaker implanted. (Tr. 460-61). Records from Saint Louis University reflect that Plaintiff presented to the "Cardiac Cath Lab," on October 10, 2012, for purposes of having a pacemaker implanted and that he was discharged the next day. (Tr. 523-27).

Second, the ALJ considered that Plaintiff's conditions improved with medication. (Tr. 21). The ALJ also considered that, although Plaintiff reported his medication made him dizzy (Tr. 177), the record did not reflect reports or findings of such side effects (Tr. 22). For example, after Plaintiff's hypertension medication was increased in January 2010, it was noted, in May 2010, that his hypertension had improved. (Tr. 245-46). Likewise, in August 2010, after Plaintiff's hypertension medication had been adjusted in July 2010, it was reported that his hypertension was improving. (Tr. 254-55). In May 2011, Dr. Coole noted that Plaintiff's hypertension was controlled with medication. (Tr. 417-18). Additionally, Plaintiff told Dr. Shekhani, in March 2011, that chiropractic treatment, the facet joint injection, and medication had helped him, and that, with the injection, his ROM, stretching, and strengthening had improved. (Tr. 313).

Indeed, conditions which can be controlled by treatment are not disabling. <u>See</u> <u>Renstrom v. Astrue</u>, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting <u>Brown v.</u> <u>Astrue</u>, 611 F.3d 941, 955 (8th Cir. 2010)); <u>Davidson v. Astrue</u>, 578 F.3d 838, 846 (8th Cir. 2009); <u>Medhaug v. Astrue</u>, 578 F.3d 805, 813 (8th Cir. 2009); <u>Schultz v.</u> <u>Astrue</u>, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).

Third, as stated above, in January 2010, when Plaintiff had poor grip strength, it was attributed to his poor effort. (Tr. 234). Certainly, when an examining physician expresses doubts about the validity of a claimant's complaints, this is a factor which discounts the claimant's credibility. <u>See</u> <u>Baker v.</u> <u>Barnhart</u>, 457 F.3d 882, 892-93 (8th Cir. 2006) (holding that the ALJ properly discounted the claimant's complaints of pain upon considering reports that the claimant exaggerated his symptoms during an examination); <u>Jones v. Callahan</u>, 122 F.3d 1148, 1151-52 (8th Cir. 1997) (holding that exaggeration of symptoms is a factor to be weighed in evaluating subjective complaints of pain); <u>Russell v.</u> <u>Sec'y of Health, Ed. & Welfare</u>, 540 F.2d 353, 357 (8th Cir. 1976) (holding that where doctors reported that the claimant was exaggerating her ailments and was uncooperative, the record did not establish the requisite degree of certainty that the claimant was disabled).

Fourth, the ALJ considered diagnostic test results. (Tr. 19-20). See 20 CFR § 404.1529(c)(2) (agency will consider "objective medical evidence" when evaluating symptoms); Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (ALJ may find claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary). In this regard, in January 2010, a shoulder x-ray showed minimal degenerative changes in Plaintiff's left shoulder. (Tr. 236). When Plaintiff was hospitalized following a motor vehicle accident, on December 14, 2010, a cervical spine x-ray showed degenerative disc disease at C5-6. (Tr. 284, 386-87). A February 15, 2011 lumbar spine magnetic resonance imaging test (MRI) showed degenerative disc disease and degenerative changes at L3-S1. A left shoulder *MRI was negative*. (Tr. 304-305). A December 12, 2011 x-ray showed *minimal degenerative changes*. (Tr. 434, 436). A May 25, 2012 electromyography test (EMG) was consistent with bilateral ulnar neuropathy due to compression at the elbow, but showed *no evidence of carpal tunnel syndrome*. (Tr. 453). An *EKG* performed when Plaintiff presented to the emergency room, on September 2, 2012, was *normal, except for "trivial" miral, tricuspal, and pulmonic regurgitation*, (Tr. 474), and an *EKG* six days later, on September 8, 2012, showed *normal sinus rhythm and "nonspecific ST and T wave abnormality."* (Tr. 516).

Fifth, the ALJ considered what Plaintiff told his medical providers. For example, in May 2010, Plaintiff had no neuromuscular complaints. (Tr. 245-46). In February 2011, he said his back pain had improved, but his shoulder pain had increased. (Tr. 309). As stated above, in March 2011, Plaintiff said his pain, ROM, stretching, and strengthening had improved. (Tr. 313). Contradictions between a claimant's sworn testimony and what he actually told physicians weighs against the claimant's credibility. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006).

Sixth, Plaintiff had conservative treatment for his complaints of arm and hand pain, and, as noted by the ALJ, Plaintiff only saw his primary care physician for his shoulder issues after his rehabilitation doctor decided Plaintiff did not require further injections or continued specialist care. (Tr. 20, 410). If an impairment can be controlled through treatment or medication, it cannot be considered disabling. Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997). Further, conservative treatment and no surgery are consistent with discrediting a claimant's allegation of disabling pain. Kamann v. Colvin, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); Casey v. Astrue, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the

[symptoms] that [he] alleged"); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).

Notably, in July 2011, it was reported that Plaintiff was wearing a wrist brace, and

Dr. Cooley noted that Plaintiff did not currently have a referral to an orthopedist.

(Tr. 419). When Dr. Hodge diagnosed Plaintiff with carpal tunnel syndrome, in

August 2010, Dr. Hodge recommended Plaintiff use a splint and modification of

his activity. (Tr. 256). When Plaintiff presented with neck and shoulder pain, on

January 5 and 19, 2011, and with shoulder and back pain, on February 28, 2011,

Dr. Shekhani recommended stretching and exercise. (Tr. 307-308, 346). On

February 21 and 28, 2011, Dr. Shekhani administered steroid injections. (310,

346). On March 7, 2011, Dr. Shekhani noted that Plaintiff was not given an

injection, and suggested Plaintiff follow up on an as needed basis. He also advised

Plaintiff regarding stretching and a wellness program. (Tr. 410). On January 18,

2012, when Plaintiff presented for a medication refill, Dr. Cooley discussed the

importance of regular stretching exercises with Plaintiff. (Tr. 425-26). In April

2012, Dr. Brancato recommended home ROM exercises for Plaintiff. (Tr. 441).

Seventh, although Plaintiff alleged an onset date of September 2, 2009, it

was reported, on December 12, 2011, that he sought treatment for back pain

"starting yesterday." (Tr. 434, 436).

Eighth, as considered by the ALJ, to the extent Plaintiff's girlfriend stated, in

a Function Report, that Plaintiff had difficulties with vision, memory,

concentration, and the ability to follow instructions, complete tasks, and get along with others, this report was inconsistent with Plaintiff's self-reporting that he had no difficulties in these areas. (Tr. 22, 170-83, 204). See Black v. Apfel, 143 F.3d 383, 387 (8th Cir. 2006) (an ALJ may discount third-party testimony for the same reasons that a claimant's testimony can be discredited). Indeed, in a Function Report, which he completed, Plaintiff did not indicate that his alleged disabling conditions affected his talking, hearing, seeing, memory, completing tasks, concentration, understanding, following instructions, or getting along with others.[7] (Tr. 204).

## B.    Severity of Plaintiff's Alleged Cardiovascular Impairment:

Plaintiff contends the ALJ erred when he failed to find Plaintiff had a medically determinable cardiovascular impairment among Plaintiff's severe impairments. In support of this argument, Plaintiff argues that objective testing confirmed a diagnosis of a cardiovascular impairment and that he was consistently treated for hypertension. For the following reasons, the court finds Plaintiff's assertion is without merit and that the ALJ's failure to find Plaintiff had a severe cardiovascular impairment is based on substantial evidence.

---

[7] Plaintiff also responded, in the Function Report, "not well" to a question asking how he followed written instructions; he responded "pretty well" to a question asking how he followed spoken instructions; and he said he got along "all right" with authority figures, and that he had never been fired or laid off from a job because of problems getting along with people. (Tr. 204-205).

As stated above, at Step 2 of the sequential analysis, an ALJ is required to determine if a claimant has a severe impairment or combination of impairments. "The severity Regulation adopts a standard for determining the threshold level of severity: the impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'" Bowen v. Yuckert, 482 U.S. 137, 153 n.11 (1987) (quoting 20 CFR § 404.1520(c)). A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities without regard to age, education, or work experience. See 20 C.F.R. §§ 404.1520(c), 404.1521(a). However, "[a]n impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007); see also 20 C.F.R. § 404.1521(a) (describing basic work activities). In other words, if the impairment has only a minimal effect on the claimant's ability to work, then it is not severe. See Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007). A claimant has the burden of establishing a severe impairment. See Kirby, 500 F.3d at 707.

An impairment or combination of impairments are not severe if they are so slight that it is unlikely that the claimant would be found disabled even if his age, education, and experience were taken into consideration. Bowen, 482 U.S. at 153 ("The severity regulation increases the efficiency and reliability of the evaluation

process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account.").  Moreover, "'[a]n impairment imposes significant limitations when its effect on a claimant's ability to perform basic work is more than slight or minimal.'" Warren v. Shalala, 29 F.3d 1287, 1291 (8th Cir. 1994) (quoting Cook v. Bowen, 797 F.2d 687, 690 (8th Cir. 1986)).  See also Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (holding that if a claimant's impairments would have no more than a minimal effect on his ability to work, they do not satisfy the requirement of step two).

20 C.F.R. § 404.1521(b) defines basic work activities as follows:

(b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include–

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

As considered by the ALJ and as discussed above in regard to Plaintiff's credibility, although Plaintiff had longstanding issues with hypertension, his doctors repeatedly reported that Plaintiff's hypertension was benign, and that, with medication adjustment, it improved, and his doctors did not impose restrictions on

Plaintiff because of his hypertension. (Tr. 249, 254-55, 296-97, 419-20, 423-26). Moreover, on September 4, 2012, Plaintiff had a generally normal EKG with "trivial" mitral, tricuspid, and pulmonic regurgitation, and, on September 8, 2012, he had an EKG with normal sinus rhythm and "nonspecific ST and T wave abnormality." (Tr. 474. 516). As for the recommendation that Plaintiff have a pacemaker, the records do not reflect that Plaintiff's doctors imposed any restrictions on Plaintiff because of the syncope or the need for a pacemaker, or that he had any complications after the implantation.

Finally, there is no evidence that Plaintiff had a cardiovascular impairment which could be expected to last for a continuous period of not less than twelve months. See 20 C.F.R. § 414.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."). The record reflects no more than three episodes of syncope; that it was not recommended that Plaintiff have a pacemaker implanted until September 2012; and that he had the pacemaker implanted soon thereafter. The record does not reflect any complications from the pacemaker's implantation or any long term resulting limitations. It is also relevant that Plaintiff did not list cardiovascular problems as the basis of his application for benefits. (Tr. 188). See Wall v. Astrue, 561 F.3d 1048, 1062 (8th Cir. 2009) (because the claimant did not allege that she suffered from a severe mental

impairment, "ALJ's failure to discuss listing 12.05C [was], therefore unsurprising"); Dunahoo, 241 F.3d at 1039 (holding that the fact that the claimant did not allege depression on his benefits application was significant even though evidence of depression was later developed). As such, the court finds that the ALJ's failure to find that Plaintiff had a severe cardiovascular condition is based on substantial evidence and consistent with the Regulations and case law.

## C.   ALJ's Duty to Fully Develop the Record:

Plaintiff argues that the ALJ failed to fully develop the record by obtaining a consultative examination. (Doc. 14 at 10-11). While an ALJ has a duty to develop the record "fairly and fully," independent of the claimant's burden to press his case, see Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004), an ALJ is required to order medical examinations and testing only if the record presented to her does not provide sufficient evidence to determine whether the claimant is disabled, see Martise v. Astrue, 641 F.3d 909, 926-27 (8th Cir. 2011). In the matter under consideration, the record includes test results, including EKG and MRI results, and blood pressure records, as well as numerous records from Plaintiff's doctors reflecting their observations upon examination of Plaintiff. Plaintiff, moreover, does not specify what further development of the record would help establish in his favor. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) (holding that the

claimant failed to show prejudice because he failed to show how evidence of other alleged medical visits would be dispositive for purposes of his claim).

To the extent Plaintiff suggests it is significant that a pacemaker was implanted after the hearing, Plaintiff could have submitted additional medical records to the Appeals Council to further develop the record. See Weber v. Barnhart, 348 F.3d 723, 725-26 (8th Cir. 2003) ("Weber certainly could have obtained these records during the appellate process and demonstrated that they were such that a remand to the ALJ was necessary. She has not done so."). As such, the court finds that the ALJ, in the instant matter, did not have an obligation to further develop the record, and that the ALJ's decision, in this regard, is based on substantial evidence.

## D.    Plaintiff's RFC:

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir.

2004) (quoting <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000)).  <u>See also</u>

<u>Myers v. Colvin</u>, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments.  <u>Anderson v. Shalala</u>, 51 F.3d. 777, 779 (8th Cir. 1995).  Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'"  <u>Lauer</u>, 245 F.3d at 704 (quoting <u>Singh v. Apfel</u>, 222 F.3d 448, 451 (8th Cir. 2000)).  The Eighth Circuit clarified, in <u>Lauer</u>, 245 F.3d at 704, that "'[s]ome medical evidence,' <u>Dykes v. Apfel</u>, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' <u>Nevland v. Apfel</u>, 204 F.3d 853, 858 (8th Cir. 2000)."  Thus, an ALJ is "required to consider at least some supporting evidence from a professional."  <u>Id.</u>  <u>See also</u> <u>Vossen v. Astrue</u>, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC.");  <u>Eichelberger</u>, 390 F.3d at 591.

As stated above, the ALJ found that Plaintiff had the RFC to perform medium work except that he had to avoid climbing ropes, ladders, or scaffolds; he

must avoid hazards of heights and machinery; and he was limited to frequent handling or gross manipulation, fingering or fine manipulation, and pushing and pulling with his arms.

Prior to formulating Plaintiff's RFC, the ALJ considered Plaintiff's assertions regarding the severity of his conditions, and determined that Plaintiff's assertions were not fully credible based on the numerous factors discussed above. The ALJ also considered the medical evidence relevant to Plaintiff's alleged impairments, including doctors' reports and objective test results such as x-rays, as set forth above in regard to Plaintiff's credibility. In regard to Plaintiff's neck and low back pain, the ALJ considered that, after his 2011 motor vehicle accident, it was determined that Plaintiff had some cervical and low back issues; that Plaintiff received only conservative treatment; that his condition was stationary; that Plaintiff had full ROM in his neck; and that records from Plaintiff's primary care physician did not assess Plaintiff with any back or neck impairments. (Tr. 19-20).

As for Plaintiff's shoulder and arm impairments, the ALJ considered that imaging showed only minimal degenerative changes in Plaintiff's left shoulder joint; that, in 2010, Plaintiff's physician found no limiting problems with Plaintiff's shoulder; that, after his 2011 accident, Plaintiff was diagnosed only with left rotator cuff strain with tendonopathy; that, after receiving a left shoulder injection, Plaintiff had significant improvement with minimal tenderness and

normal ROM; that, since completing rehabilitation, Plaintiff had seen only his primary care physician for his shoulder; and that no treating doctor imposed any shoulder-related limitations. (Tr. 20).

As for Plaintiff's wrist and arm issues, the ALJ considered that, although Plaintiff reported some hand numbness, in 2010, he had pain free active ROM in his wrist; that Plaintiff was diagnosed with unspecified idiopathic peripheral neuropathy; that, in early 2011, Plaintiff had a negative wrist x-ray; that Plaintiff was subsequently diagnosed with carpal tunnel syndrome; that subsequent testing was non-consistent with carpal tunnel syndrome; that 2012 testing found no evidence of carpal tunnel syndrome; and that, other than Plaintiff's reporting continuing wrist and hand pain, the record did not include evidence to show that Plaintiff had such problems. (Tr. 20-21).

To the extent Plaintiff contends that the ALJ may have erred when she noted that Plaintiff's doctor found his wrist and hand impairment had improved enough that Plaintiff no longer needed medication, this was just one of the numerous factors considered by the ALJ, and the record does not reflect that any misstatement by the ALJ, in this regard, affected the outcome of Plaintiff's case. See Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008); Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in

opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.").

Further, in regard to Plaintiff's hypertension, the ALJ considered that Plaintiff's doctor repeatedly characterized it as improving and benign. (Tr. 21). The court has set forth above factors considered by the ALJ relevant to Plaintiff's alleged cardiovascular issues. As for Plaintiff's polysubstance abuse, the ALJ found that this condition did not cause any significant functional limitations. (Tr. 22).

After considering the medical evidence as well as other evidence of record and Plaintiff's credibility, the ALJ concluded that Plaintiff's hypertension and polysubstance abuse were not severe and that his disc disease, left rotator cuff strain, and bilateral ulnar neuropathy were severe. Given the ALJ's extensive and meticulous discussion addressing each of Plaintiff's conditions, the court finds without merit Plaintiff's arguments that the ALJ failed to consider the effects of Plaintiff's individual impairments and the effect of the combination of his impairments.

After identifying Plaintiff's functional limitations and restrictions, the ALJ assessed his work-related abilities. To the extent Plaintiff contends the ALJ should have included greater restrictions in his RFC than were included, the ALJ was required to include only Plaintiff's credible limitations. See Tindell v. Barnhart,

444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record.").

To the extent Plaintiff argues that no single source supported the ALJ's RFC determination, in formulating a claimant's RFC, the "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physician's." Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011).

In conclusion, the court finds that the ALJ properly considered the evidence of record when determining Plaintiff's RFC and that the ALJ's RFC determination is based on substantial evidence and consistent with the Regulations and case law. As such, the court finds that Plaintiff's argument that there is no medical support for the ALJ's RFC assessment is without merit. Notably, in determining Plaintiff's RFC, the ALJ was fulfilling her role of doing so based on all relevant, credible evidence of record. See Vossen, 612 F.3d at 1016; Tucker, 363 F.3d at 783.

After determining Plaintiff's RFC, the ALJ posed a hypothetical question to the VE which described a person of Plaintiff's age and with his RFC, work experience, and education, and the VE testified that Plaintiff could perform his past relevant work as a cook, as well as other positions which are available in significant numbers in the national economy. (Tr. 23-24, 59-60). See 20 C.F.R. §

35

404.1560(b)(3) (if a claimant can perform past relevant work, the claimant is not disabled within the meaning of the Act); Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion . . . that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)). To the extent Plaintiff suggests the ALJ should have posed a hypothetical to the VE which included additional limitations (Doc. 14 at 9), the court finds that the hypothetical posed to the VE was proper, as it included those restrictions and impairments which the ALJ found credible. See Renstrom, 680 F.3d at 1067; Martise, 641 F.3d at 927 ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix, 465 F.3d at 889). Based on the VE's testimony, the ALJ found Plaintiff not disabled. See Martise, 641 F.3d at 927; Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990). The court finds, therefore, that the ALJ's ultimate

determination that Plaintiff was not disabled is based on substantial evidence and consistent with the Regulations and case law.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint (Docs. 1, 14) is **DENIED**;

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 5th day of August 2015.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE